# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| HOWARD L. JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-CV-984 SNLJ-NAB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of

Social Security's final decision denying Howard L. James' ("James") application for

supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

§§ 1381 *et seq.* James alleged disability due to substance abuse and a bad liver. (Tr. 178.) This

matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(b)(1) for a report and recommendation. [Doc. 4.]

## I.      Background

On September 11, 2007, James applied for SSI benefits. (Tr. 161-163.) The Social

Security Administration ("SSA") denied James' claim and he filed a timely request for a hearing

before an administrative law judge ("ALJ"). (Tr. 88-93.) The SSA granted James's request for

review. (Tr. 95-96.) An administrative hearing was held on July 28, 2009. (Tr. 25-44.) James,

who was represented by counsel, testified at the hearing. The ALJ issued a written opinion

upholding the denial of benefits. (Tr. 71-76.) James requested review of the ALJ's decision

from the Appeals Council. (Tr. 123.) On February 28, 2011, the Appeals Council granted

James's request for review. (Tr. 80-83.) The Appeals Council remanded the case to the ALJ to obtain additional evidence and issue a new decision. (Tr. 85-87.) James submitted additional evidence and another administrative hearing was held on September 19, 2011 before a different ALJ. (Tr. 45-65.) James and vocational expert Delores Gonzalez testified at the hearing. The new ALJ issued a written decision again denying benefits. (Tr. 9-18.) James again requested review of the ALJ's decision by the Appeals Council, but the Appeals Council denied his request for review. (Tr. 1-5.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 107 (2000). James filed this appeal on May 22, 2013. [Doc. 1.] The Commissioner filed an Answer and the certified Administrative Transcript on August 1, 2013. [Docs. 8, 9.] James filed a Brief in Support of Complaint on February 6, 2014. [Doc. 16.] The Commissioner filed a Brief in Support of the Answer on April 30, 2014. [Doc. 21.]

## II.    Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R.

2

§ 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. § 416.920(a)(iii).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 416.920(a)(4)(v).

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). Therefore, even if this Court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Gwathney v. Chater,* 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### III.   ALJ's Decision

The ALJ determined that James has not engaged in substantial gainful activity since September 11, 2007.  (Tr. 12.)   The ALJ found that James had the severe impairments of polysubstance abuse, discogenic and degenerative disorders of the back, anxiety, and depression. (Tr. 12.)  The ALJ also determined that James did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart, Appendix 1.  (Tr. 12.)  The ALJ then found that James had the residual functional capacity ("RFC") to perform light work, except that he could not perform work that required the following:  (1) climbing ropes, ladders or scaffolds; (2) more than frequent stooping, kneeling, crouching, and crawling; (3) working with or around industrial hazards and dangerous machinery; (4) understanding, remembering, and carrying out more than at least simple instructions and non-detailed tasks; (5) constant/regular contact with the general public; and (6) more than infrequent handling of customer complaints.  (Tr. 13.)  The ALJ stated that James was unable to perform past relevant work, but there were jobs that exist in significant numbers in the national economy that he can perform.  (Tr. 16-17.)   Based on the foregoing, the ALJ

concluded that James has not been under a disability, as defined in the Social Security Act since September 11, 2007, the date the application was filed.  (Tr. 18.)

## IV.     Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A.     Administrative Hearings

#### 1.     James' Testimony

At the time of the first administrative hearing, James testified that he was fifty years old and had completed the eighth grade.  (Tr. 30-31, 48.)  James stated that he could not read, write, or perform basic math.  (Tr. 31.)  If he goes to the grocery store, he is unable to determine if he has been given the correct change.  (Tr. 31.)  He is also unable to know how much money he made, because he cannot count money.  (Tr. 33.)

James testified that his most recent jobs were serving as an at-home health care worker for his father and working at a cleaning service.  (Tr. 33-34, 48.)  While caring for his father, James had a hard time due to muscle spasms, which made it difficult to button his dad's shirts or pick him up.  (Tr. 33.)  His father was in a wheelchair.  (Tr. 33.)  At the time of the second administrative hearing, his father had died.  (Tr. 49.)

During his cleaning job, he became sick with stomach and breathing problems.  (Tr. 34.)  He also has acid reflux, which causes him to throw up.  (Tr. 34.)  He experiences constant pain in his stomach, with the pain rating as an eight on a ten point scale with ten being the most severe.  (Tr. 36.)

James also testified that he has hepatitis, but he is unable to start treatment until he is "clean" from alcohol for a year.  (Tr. 38.)  At the time of the first administrative hearing, James stated that he had not had alcohol for seven months and he was attending alcoholics anonymous

meetings.  (Tr. 38.)  At the time of the second administrative hearing, he had not used alcohol or marijuana for two months.  (Tr. 53.)  Before that time, he had been drinking a pint of alcohol whenever he received some money.  (Tr. 53.)  He never had money, so he could not buy it.  (Tr. 53.)  His kidney problems caused him to use the bathroom every 10 to 15 minutes.  (Tr. 55.)

James also has problems with constant pain in his right knee and back.  (Tr. 38-39, 54.)  The pain in his back is rated as an eight and his knee pain is rated at a nine.  (Tr. 39.)  His foot swells up at night.  (Tr. 54.)  James testified that he can walk half a block and he uses a cane.  (Tr. 54.)  He also stated that he falls a lot.  (Tr. 54.)  He cannot stand longer than 10 to 20 minutes.  (Tr. 57.)  If he stands for long periods of time, he becomes dizzy and starts breathing hard.  (Tr. 57.)  James cannot climb up stairs because he has to stop halfway to catch his breath.  (Tr. 40.)  James cannot bend at all.  (Tr. 40.)

He testified that his brothers and sisters help him by cooking for him and cleaning his room.   (Tr. 40.)   James stated that he had not driven in a year at the time of the first administrative hearing, because of his breathing, his hands, and dizziness.  (Tr. 40-41.)  James also has prostate problems, hypertension, and headaches.  (Tr. 41, 56.)  He takes medicine for his high blood pressure. (Tr. 56.)  He could not understand the directions for his medication and his sister had to help him.  (Tr. 58.)

James testified that he spends most of his day in bed, because he is in so much pain all of the time.  (Tr. 42.)  He also does not want to be around people.  (Tr. 42.)  At the time of the hearing, he testified his mother was dying of cancer.  (Tr. 42.)  He testified that he could not care for her.  (Tr. 42.)  He did not go grocery shopping, but he goes to church sometimes.  (Tr. 42.)  He does not have friends to go out with.  (Tr. 42.)  His medication makes him drowsy, so he takes cat naps during the day.  (Tr. 42.)  Most of the time he has lived with his parents and they

have taken care of him. (Tr. 43.) At the time of the second administrative hearing, James was living with his sister and niece. (Tr. 48.)

### 2. VE Delores Gonzalez

VE Delores Gonzalez testified that James's work as a home health aide and lawn mower was unskilled medium exertional work, his work as an office cleaner/janitor was heavy unskilled work, and his work as an odd job worker was unskilled medium exertional level. (Tr. 62.) She stated that if the claimant was limited to light exertional work that required avoiding ropes, ladders, scaffolding, and hazardous machinery; limited to unskilled work, no work that requires constant regular contact with the general public or more than infrequent handling of customer complaints, but he can frequently stoop beyond crouching and crawling he could not perform any of his past relevant work. (Tr. 62.) With the limitations cited by the ALJ, the VE stated that James could perform work as a housekeeper/cleaner, electrode cleaner, and a hand presser. (Tr. 63.) She also testified that if the additional limitation of one additional unscheduled break per day due to a combination of mental or physical factors was added, the person would be unable to work competitively. (Tr. 64.)

### B. Medical Records

The relevant medical evidence is as follows:

### 1. Medical Evidence[1]

James' medical records regarding his physical impairments are extensive. James received treatment from his primary treating physician, Dr. Kenneth Wilkins between 2007 and 2011. Dr. Wilkins treated James for uncontrolled hypertension, hyperlipidemia, elevated liver enzymes, blood in stool, pain in his right hip and knee, lower back pain, chronic airway

---

[1] There are numerous duplications of medical records in the Administrative Transcript. The undersigned will not note all duplications of medical records.

obstruction, gastrointestinal problems, and alcohol abuse. (Tr. 387-414, 583-622, 670-675, 689-708.)

James also received extensive treatment for chest pain, shortness of breath, hypertension, hyperlipidemia, constipation, muscle spasms, alcoholic hepatitis, and liver cirrhosis, bloody stool, and lower back pain from St. Louis Connect Care. (Tr. 277-552, 623-650, 678-679, 717-719, 849-850.) His treatment providers repeatedly told him to refrain from drinking alcohol. (Tr. 281, 308-309, 340.)

James visited the emergency room at Barnes Jewish Hospital and received treatment for chest pain in September 2008 and July 2009. (Tr. 721-768, 770-807.) James visited the emergency room at Barnes Jewish in January 2010 for weakness and dizziness. (Tr. 809-842.) James was hospitalized at the psychiatric unit at St. Alexius Hospital between April 11, 2011 and April 21, 2011, initially for depression. (Tr. 680-687.) During his psychiatric stay, he was transferred to the medical unit due to abdominal pain, nausea, and elevated liver enzymes. (Tr. 680.) After his hospitalization, he was diagnosed with acute pancreatitis, alcoholic, acute renal failure, alcohol abuse, depressive disorder, chronic Hepatitis C, hypertension, benign prostatic hyperplasia, and chronic obstructive pulmonary disease. (Tr. 681.) He was instructed to abstain from all alcohol consumption. (Tr. 681.)

James received mental health treatment from Dr. Mohammed Sameer Arain, a psychiatrist in April and May 2011. (Tr. 710-713.) Dr. Arain diagnosed James with major depressive disorder, alcohol dependence, and psychosis not otherwise specified. (Tr. 712, 713.) Before James' April 2011 hospitalization, Dr. Arain assessed James' GAF at 20 and recommended hospitalization for evaluation. (Tr. 712.) A GAF of 20 indicates there is some

danger of the patient hurting self or others, occasionally failing to maintain minimal personal hygiene, and gross impairment in communication. DSM-IV-TR at 34.

### 2. Medical Opinion Evidence

#### a. Sherman Sklar, M.E.

On October 7, 2007, Sherman Sklar, a licensed psychologist, completed a consultative mental examination of James. (Tr. 254-257.) Upon examination, Mr. Sklar found that James' affect was upbeat and positive and there were no signs of a thought disturbance. (Tr. 256.) He noted that James' cognitive functioning was much impaired and would indicate that James had a low level of intellectual functioning. (Tr. 256.) Mr. Sklar described James as a "social isolate." Mr. Sklar also opined that James had marked deficits in concentration, persistence, and pace. (Tr. 257.) He diagnosed James with alcohol dependence and gave him a global assessment functioning score[2] ("GAF") of 42. A score of 41-50 indicates serious symptoms or serious impairment in social, occupational or school functioning. DSM-IV-TR at 34.

#### b. Dr. Robert Cottone

On October 22, 2007, Dr. Robert Cottone, a Social Security consultative examiner, reviewed James medical records and completed a Psychiatric Review Technique. (Tr. 259-269.) Dr. Cottone opined that James had no medically determinable impairment and that the case was "uncomplicated substance abuse" and "mentally uncomplicated alcoholism." (Tr. 259, 269.)

#### c. Dr. Amy Marty

Dr. Amy Marty completed a consultative examination, at James' request, on January 12, 2010. (Tr. 844-847.) Dr. Marty opined that James' mood was mildly depressed and congruent, and his affect was flat. (Tr. 846.) Dr. Marty noted problems with James cognitive ability. (Tr.

---

[2] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) ("DSM-IV-TR").

846.) Dr. Marty also noted that James appeared to be socially isolated. (Tr. 847.) Dr. Marty opined that James "evidenced severe difficulty in his ability to maintain adequate attention and concentration with appropriate persistence and pace throughout the evaluation. (Tr. 847.) She diagnosed him with major depressive disorder, cognitive disorder not otherwise specified, and alcohol dependence. (Tr. 847.) She also stated that James "did not appear competent or evidence good judgment to utilize the benefits and funds should they be provided to him due to cognitive problems and a recent history of daily alcohol use." (Tr. 847.)

### d.    Shirley Campbell, FNPC

Shirley Campbell, a certified family nurse practitioner, completed a "Hepatitis C Residual Functional Capacity Questionnaire" regarding James on September 25, 2009. (Tr. 652-656.) Ms. Campbell noted that James had symptomatic Hepatitis C and hypertension. (Tr. 652.) She identified his symptoms as chronic fatigue, right upper quadrant pain, enlarged liver, muscle and joint aches, abdominal pain, weakness, loss of appetite, urinary frequency, sleep disturbance, recurrent/persistent diarrhea, and headaches. (Tr. 652.) She stated that James received no treatment for Hepatitis C. (Tr. 652.) She also noted that depression and anxiety affected his physical condition. (Tr. 653.) She indicated that he was capable of low stress jobs." (Tr. 653.) She also indicated walking, sitting, and standing limitations, as stated by James. (Tr. 653-654.) She did not complete the remainder of the assessment. (Tr. 654-655.)

## V.    Discussion

James presents two issues for review. First, James contends that the ALJ erred in her evaluation of the opinions of psychologist Amy J. Marty, Ph.D., and licensed psychologist Sherman Sklar, M.E. Second, James contends that the ALJ did not explain the weight given to nurse practitioner Shirley Campbell.

### A. Medical Opinions

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what a claimant can do despite the impairments, and physical and mental restrictions. 20 C.F.R. § 416.927(a)(2). Medical opinions are considered along with the rest of the relevant evidence received. 20 C.F.R. § 416.927(b). Medical opinions are weighed based on several factors including (1) whether the source examined claimant, (2) whether the source is a treating source, (3) length, nature and extent of the treatment relationship and frequency of examination, (4) evidence in the record supporting source's opinion, (5) consistency with the record as a whole, (6) specialization of the source, and (7) other factors that may support or contradict the opinion. 20 C.F.R. § 416.927(c).

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if [the conclusions] are inconsistent with the record as a whole." *Id.* "The ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The ALJ is required to consider all of the evidence in the record as a whole.

### 1. Dr. Marty

In this case, the ALJ did not assign a weight to Dr. Marty's opinion. (Tr. 15-16.) The ALJ stated that Dr. Marty found that James had severe difficulty in his ability to maintain concentration, persistence and pace. (Tr. 16.) The ALJ criticized Dr. Marty's opinion stating that she failed to address how James' continued substance abuse would attenuate his psychiatric

presentation and she assigned him a GAF score of sixty, indicating no more than moderate difficulties in social, occupational and educational functioning.  (Tr. 16.) James contends that ALJ erred, because the reasons for rejecting her opinion were insufficient.  He asserts that the ALJ did not evaluate Dr. Marty's opinion as required by 20 C.F.R. § 416.927(c), applied the substance abuse rules improperly, and should not have considered the GAF scores, because they have no direct correlation to the severity requirements in the mental disorders listing.

The undersigned agrees that the ALJ should have assigned a weight to Dr. Marty's opinion.  The ALJ's RFC determination, however, as acknowledged by James, includes restrictions regarding concentration, persistence, and pace.  The RFC determination limits James to work with simple instructions and non-detailed tasks and work that does not include constant or regular contact with the general public or more than infrequent handling of customer complaints.  (Tr. 13.)  Therefore, although it should have been stated explicitly, it is clear that the ALJ gave Dr. Marty's opinion some weight and the ALJ did not commit reversible error.  *See Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996.) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where the deficiency probably has no practical effect on the outcome of the case.")  Also, despite James' contention to the contrary, the ALJ is not required to adopt the entire opinion of any particular source's opinion.  The ALJ was not required to adopt Dr. Marty's opinion in whole or in part.

Next, the undersigned notes that Dr. Marty diagnosed James with alcohol dependence and opined that he did not appear competent or show good judgment to utilize his benefits due to cognitive problems and daily alcohol use.  (Tr. 847.)  The ALJ stated that one of the reasons that Dr. Marty's opinion was discounted, because she did not address how James' continued substance abuse would affect his psychiatric presentation.  (Tr. 16.)  The Social Security Act

states that if alcohol or drug abuse is a contributing factor material to the determination of disability, the application must be denied. 42 U.S.C. § 423(d)(2)(C). "The plain text of the relevant regulation requires the ALJ to first determine whether [the claimant] is disabled." *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003). Only after the ALJ has made an initial determination that a claimant is disabled, that drug or alcohol use is a concern, and that substantial evidence on the record shows what limitations would remain in the absence of alcohol or drug addiction, may he then reach a conclusion on whether the claimant's substance use disorders are a contributing factor material to the determination of disability. *Brueggemann*, 348 F.3d at 695, 20 C.F.R. § 416.925(a). "The ALJ must reach this determination initially, … using the five-step approach without segregating out any effects that might be due to substance use disorders." *Brueggemann*, 348 F.3d at 694.

James is correct that the ALJ's initial disability determination on substantial evidence of [the claimant's] medical limitations should not include deductions for the assumed effects of substance use disorders. *Brueggemann*, 348 F.3d at 694. The ALJ is first required to make a determination of disability without considering any potential causes from substance abuse. *Id.* In determining the supportability of Dr. Marty's opinion, the ALJ could consider whether Dr. Mary accounted for James' substance abuse in her evaluation. *See* 20 C.F.R. § 416.927. Because the ALJ did not find that James was disabled, however, it was not necessary to complete an analysis under *Brueggemann*.

The undersigned also finds that the ALJ could consider that Dr. Marty gave James a higher GAF score. Although a GAF score is not outcome determinative, "GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning." *Halverson v.*

*Astrue*, 600 F.3d 922, 931 (8th Cir. 2010). Based on the foregoing, the undersigned does not find reversible error in the ALJ's evaluation of Dr. Marty's opinion.

### 2. Mr. Sklar

Next, James contends that the ALJ erred in giving little weight to Mr. Sklar's opinion, because the ALJ improperly considered that Mr. Sklar's only diagnosis was alcohol dependence and his opinion was consistent with Dr. Marty's opinion. The ALJ stated that Mr. Sklar's opinion found much more severe psychiatric impairments than identified in the remainder of the record. (Tr. 16.) The ALJ opined that Mr. Sklar's opinion was based on only subjective complaints in a single interview. (Tr. 16.) The ALJ then stated, "Given that Mr. Sklar found no mental disorder other than alcohol dependence and the functional limitations he describes are wholly unsupported by the remainder of the record, his opinion shall be given little weight." (Tr. 16.)

As an initial matter, the undersigned notes that the ALJ should not have considered the type of diagnosis given by Mr. Sklar in affording weight to Mr. Sklar's opinion. The type of diagnosis given by a source is not a factor for evaluating the source's opinion. 20 C.F.R. § 416.927(c). Next, the undersigned finds that based on a review of the record as a whole, Mr. Sklar's opinion was substantially similar to Dr. Marty's opinion, which the Commissioner acknowledges was given some weight. The most prominent difference was that Mr. Sklar only diagnosed James with alcohol dependence and Dr. Marty diagnosed James with major depressive disorder, cognitive disorder not otherwise specified, and alcohol dependence. (Tr. 257, 847.) The Commissioner notes that James' treating sources never indicated any significant psychiatric symptoms and found that he had normal activities of daily living. But, it should be noted that James' treating providers were not evaluating James for any mental impairments and do no

specialize in that area.  Based on a review of the record, the undersigned finds that the ALJ erred

in giving little weight to Mr. Sklar's medical opinion and the error was not harmless.

### 3.        Nurse Practitioner Shirley Campbell

Finally, James contends that the ALJ did not explain the weight given to nurse

practitioner Shirley Campbell's RFC assessment and any affect it had on the RFC determination.

The ALJ noted that the record included a RFC questionnaire completed by a "nurse practitioner

in Dr. Wilkins' office."  (Tr. 14.)  The ALJ also noted that the signs and symptoms reported by

the nurse practitioner were "based primarily on claimant's subjective complaints."  (Tr. 14.)  The

ALJ mentioned that Ms. Campbell's RFC assessment stated that James was capable of low stress

jobs.  (Tr. 14.)  The Commissioner contends that it can be inferred that the ALJ gave some

weight to Campbell's opinion.

> Social Security separates information sources into two main groups: *acceptable
> medical sources* and *other sources.*  It then divides *other sources* into two groups:
> *medical sources* and *non-medical sources.  Acceptable medical sources* include
> licensed physicians (medical or osteopathic doctors) and licensed or certified
> psychologists.  According to Social Security regulations, there are three major
> distinctions between acceptable medical sources and the others: (1) Only
> acceptable medical sources can provide evidence to establish the existence of a
> medically determinable impairment, (2) only acceptable medical sources can
> provide medical opinions, and (3) only acceptable medical sources can be
> considered treating sources,

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations

omitted).  Medical sources include nurse practitioners, physician assistants, licensed clinical

social workers, naturopaths, chiropractors, audiologists, and therapists."  20 C.F.R. § 416.913(d).

"Information from these other sources cannot establish the existence of a medically determinable

impairment.  Instead, there must be evidence from an "acceptable medical source" for this

purpose."  SSR 06-03P, 2006 WL 2329939.  "[I]nformation from such other sources, [however],

may be based on special knowledge of the individual and may provide insight into the severity of

the impairment(s) and how it affects the individual's ability to function. *Id.*; 20 C.F.R. § 416.913(d).

In this case, the ALJ's failure to assign weight was not harmless error. Unlike Dr. Marty's opinion, it is not clear whether any limitations were included in the RFC determination based on Ms. Campbell's opinion or whether it would be appropriate to do so. The undersigned notes that the RFC questionnaire was substantially incomplete regarding James' physical diagnoses and noted at times, it was based on what James told her. (Tr. 652-656.) In support of the RFC determination, the ALJ states that "the nurse practitioner from Dr. Wilkins' office opined the claimant was capable of performing low stress jobs." (Tr. 16.)

The Commissioner contends that the ALJ's multiple errors regarding Mr. Sklar and Ms. Campbell's opinions are a deficiency in opinion writing, and thus harmless. The undersigned finds it difficult to hold that the combination of the multiple errors and deficiencies in opinion writing clearly evident in this case are harmless. Giving the Commissioner her due deference and examining the record as a whole, the undersigned finds that the ALJ can make a baseline argument that the evaluation of Dr. Marty's opinion meets the substantial evidence standard, but that standard is not met regarding the opinions of Mr. Sklar and Ms. Campbell. Therefore, the undersigned will recommend that this action be reversed and remanded for a new evaluation of the opinion evidence of Mr. Sklar and Ms. Campbell, a new RFC determination, and a new determination of disability.

## VI.    Conclusion

Based on the evidence in the record as a whole, the undersigned finds that the ALJ's decision is not supported by substantial evidence in the record as a whole. Therefore, the undersigned recommends that the Commissioner's final decision be reversed and remanded.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by James in his Complaint and Brief in Support of Complaint be **GRANTED in part and DENIED in part**. [Docs. 1, 16.]

**IT IS FURTHER RECOMMENDED that this case be REVERSED and REMANDED** for a new evaluation of the opinion evidence of Mr. Sklar and Ms. Campbell, a new RFC determination, and a new determination of disability.

**IT IS FURTHER RECOMMENDED** that Judgment be entered in favor of the Plaintiff.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Halpin v. Shalala*, 999 F.2d 342, 345 (8th Cir. 1993).

Dated this 15th day of September, 2014.


　　　　　　　　　　　  /s/ Nannette A. Baker
　　　　　　　　　　　 NANNETTE A. BAKER
　　　　　　　　　　　 UNITED STATES MAGISTRATE JUDGE